## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

VIZION ONE, Inc.                                     )
6856 Eastern Ave., Suite 350                         )
Washington, DC 20012                                 )
                                                 )
                                                 )
       Plaintiff,    )
v.                                                   )
                                                 )
THE DISTRICT OF COLUMBIA                             )
                                                 )
Defendant                                            )
                                                 )
SERVE:                                               )
Office of the Attorney General for the               )
District of Columbia                                 )
441 4th Street, N.W.                                 )
One Judiciary Square -6th floor South                )
Washington, DC 20001                                 )
                                                 )
SERVE:                                               )
Attorney General for the District of Columbia        )
950 Pennsylvania Avenue, NW                          )
Washington, DC  20053                                )
                                                 )
UNITED STATES ATTORNEY'S OFFICE                      )
555 3rd Street, NW                                   )
Washington, DC 20530                                 )
SERVE:                                               )
Civil Process Clerk                                  )
U.S. Attorney's Office                               )
Rom E4207                                            )
Washington, DC 20530                                 )
                                                 )
_____ )

## COMPLAINT

Plaintiff, Vizion One, Inc. ("Vizion One"), hereby files this civil action for damages and

equitable and declaratory relief against the District of Columbia government ("Defendant").

Plaintiff alleges herein that Defendant effectively terminated its participation in the District of

1

Columbia's Medicaid program and its business operation as a result of a purported "temporary" suspension of Plaintiff's Medicaid reimbursements on the basis of a "credible allegations of fraud.", Plaintiff challenges here the constitutionality of Section 6402(h)(2) of the Patient Protection and Affordable Care Act (P.L. 111-148) ("ACA") and 42 C.F.R. §455.23, which seeks to implement this provision as applied by the District of Columbia government on vagueness and other grounds. Plaintiff asserts that these provisions lack clarity and are confusing as per the meaning of the terms "credible allegation", "credible allegation of fraud", "individual" and "fraud", applied and negate due process safeguards which protect Plaintiff's property rights and/or liberty interests. Plaintiff further asserts that the vagaries in these terms and/or Defendant's failure to institute anticipated regulations to safeguard its rights violated its due process rights under the Fifth Amendment to the United States constitution and made enforcement of the applicable law wholly dependent on the Defendant's officials' subjective interpretation of these terms with the attendant dangers of their arbitrary and discriminatory application in a manner not intended, we submit, by the statute. Hence, Defendant was able to de *facto* terminate Plaintiff from its Medicaid program without disclosing the reasons for its decision and to ultimately contribute to the destruction of Plaintiff's business.

## JURISDICTION AND VENUE

1.     Plaintiff alleges, among other claims, a deprivation of rights secured by the due process clauses of the Fifth Amendment, pursuant to 42 U.S.C. §1983. Plaintiff has filed for relief in the District of Columbia Office of Administrative Hearings. Instructively, on April 23, 2014, the presiding Administrative Law Judge denied Plaintiff's request for a stay of the government's decision to suspend payments to Plaintiff indicating as follows: "*I have no power to stay the*

*temporary suspension of Medicaid payments pending the outcome of the hearing. The case is subject to any rulings issued by a court of competent jurisdiction.*" (Emphasis added)

2.      This Court has jurisdiction over the claims for equitable and other relief herein pursuant to 28 U.S.C. §§ 1331, 2201 and 2202, the Fifth Amendment to the Constitution of the United States, and 42 U.S.C. §1983.

3.      Venue is proper in this District under 28 U.S.C. §1391(b) since the conduct at issue occurred in the District of Columbia ("D.C.").

**PARTIES**

4.      Plaintiff, Vizion One, Inc. ("Vizion One") is a D.C. corporation licensed by the D.C. Department of Health ("DOH") to provide Personal Care Aid ("PCA") services to D.C. residents who are eligible to receive Medicaid benefits.

5.      Defendant, District of Columbia government, is a municipality and its  Department of Health Care Finance ("DHCF") administers its Medicaid program.   Wayne Turnage ("Turnage") is the Director of DHCF.   Plaintiff asserts *respondeat superior* where applicable.

**FACTS COMMON TO ALL CLAIMS**

**Governing Federal Law**

6.      Medicaid is a jointly funded, Federal-State health insurance program for low-income and needy people. *See generally* 42 U.S.C. § 1396 *et seq.*   It typically covers low-income populations, children, disabled individuals, and other people who are eligible to receive federally assisted income maintenance payments. 42 U.S.C. § 1396a(a). In general, States determine the overall scope and extent of their programs and are responsible for operating their programs. However, in order to obtain federal financial participation or "FFP" (sometimes referred to as "matching funds") to fund their programs (*see* 42 U.S.C. § 1396b), States must abide by certain

mandatory federal requirements. 42 U.S.C. § 1396a(a). Federal Medicaid regulations have long authorized State Medicaid agencies to withhold payments to providers, either in whole or in part, pursuant to 42 C.F.R. § 455.23(a), where such an agency was able to present *"reliable* evidence of fraudulent activity by the provider." (Emphasis added)

7. Termination of Plaintiff from the Medicaid Program constitutes a property and/or liberty interest protected by the due process clause of the Fifth Amendment.

8.      In 2011, the United States Congress passed the Patient Protection and Affordable Care Act (P.L. 111-148) ("ACA"). The ACA, at Section 6402(h)(2), authorizes State agencies to suspend payments, either in whole or in part, to providers under investigation for *"credible allegations of fraud."* Hence, the standard is substantially lowered from "reliable evidence" to "credible allegation" of fraud.

> The new language in the Act provides as follows:
>
> The State Medical agency must suspend all Medicaid payment to a provider *after the agency determines* there is a *credible allegation of fraud* for which an investigation is pending under the Medicaid program *against an individual* or entity *unless the agency has good cause to not suspend payments or to suspend payment only in part.* (Emphasis added)

9.      Plaintiff asserts that the terms "credible allegations of fraud", the burden of proof for sustaining a "credible allegation of fraud", the term "individual" independently, and in the context of "good cause" in the ACA and applicable regulations are vague, as applied by the District of Columbia government.    The vagueness of these terms promotes procedural infirmities that resulted in an unjust suspension of Vizion One's Medicaid payment and its *de facto* termination without meaningful constitutional due process.    In simple parlance, the government has terminated Vizion One's multi-million dollar home health care contract without

having to disclose the factual predicate for its decision, or giving Vizion One an opportunity to respond to its "credible allegations of fraud."

10.     Defendant also refused to consider Vizion One's reasonable alternatives to complete payment versus partial payment suspension, based on statutory criteria for good cause, particularly where the "credible allegation of fraud" involved a single employee in one unit of Plaintiff's business.  In the immediate case, there are no asserted or known allegations of fraud against any manager or supervisor, nor a pattern of asserted fraud against Vizion One.

11.     Further, Defendant failed to develop independent, local regulations and guidelines that would ensure that a fair, objective and impartial process in the determination of "credible allegations" of fraud and the existence of "good cause."

12.     Defendant's February 20, 2014 immediate, summary suspension of all Medicaid reimbursements to Vizion One, Inc., prevented Plaintiff from making its February 21, 2014 payroll.  Since then, its payroll and overhead obligations have increased exponentially to the point that Vizion One will soon necessarily cease its business operation.

13.     On or about February 2, 2011, the Center for Medicare & Medicaid Services ("CMS"), the federal agency responsible for managing the federal Medicaid program, modified 42 C.F.R. §455.23(a) to conform with the ACA by making payment suspensions mandatory where a State agency determines that there is an ongoing investigation of a "credible allegation of fraud" against a provider.

14.     Based upon the revised regulations, a "credible allegation of fraud" must be "verified by the State."  42 C.F.R. §455.2.  Upon receipt of an allegation, DHCF is required to conduct "a preliminary investigation to determine whether there is sufficient basis to warrant a full investigation."  42 C.F.R. §455.14.   In the immediate case, Defendant conducted a preliminary

investigation and a subsequent investigation of Vizion One but has not released any finding, summary report or any information regarding that investigation and the extent to which it shows a "credible allegation of fraud" to Plaintiff. Hence, Plaintiff has no knowledge as to what the District has concluded therein.

15.     Applicable CFR regulations define "fraud" as "an intentional deception or misrepresentation made by a person with knowledge that the deception could result in some unauthorized benefits to himself or some other person. It includes any act that constitutes fraud under applicable Federal or State law." 42 C.F.R. §455.2.  At no time has the District indicated any actions by Plaintiff's management or supervisorial team that constitutes fraud, nevertheless any "intentional" misconduct.

16.     If the findings of the preliminary investigation give DHCF  notice "that an incident of fraud or abuse has occurred," DHCF  is required to refer the matter for investigation to the State's Medicaid fraud control unit, or an "appropriate law enforcement agency." 42 C.F.R. §455.15.  To date, there are no known credible allegations of fraud against Vizion One's managers or  supervisors.

17.     Applicable federal regulations also provide, in pertinent part, that a State may find that good cause exists not to fully suspend payments, or not to continue a payment suspension previously imposed, to an individual or entity against which there is an investigation or a credible allegation of fraud, when the State determines based upon the submission of written evidence by the individual or entity subject to the payment suspension, that certain factual reasons exist that justify the suspension's removal including, but not limited to, the State's determination that payment suspension is not in the best interests of the Medicaid program or the

"credible allegation of fraud" focuses solely and definitively on only a specific type of claim, or arises from a provider's specific business unit.

18.   The comments to the revised federal regulations, as seen in responses thereto, are particularly instructive regarding the requirement of a deliberative process and insuring adequate safeguards prior to potentially disrupting and/or permanently terminating Provider's business based upon an undisclosed "credible allegation of fraud."

19.   One pertinent response regarding adequate procedural safeguards provided: "Due to the potential for not just false allegations, but also the equal possibility of honest mistakes and the like, we encourage the States to not solely rely on a singular allegation without considering the total facts and circumstances surrounding such allegations. In the proposed rule, we indicated that States 'must review all allegations, facts, and evidence carefully and act judiciously on a case-by-case basis.'"

20.   Another comment to the federal regulations stated that this law encouraged the Agency to consider the extent to which there was a "pattern" of fraud.

21.   The most significant comment and response to the then proposed federal regulations, relative to Vizion One's due process claims, state as follows:

> *Comment*: Several commenters' suggested that the proposed rule does not provide adequate due process for providers facing suspension of payments. *Certain commenters also suggested that the proposed rule could result in a de facto termination from the Medicaid program without any meaningful due process.*
>
> *Response*: Under the proposed rule, providers have an opportunity to submit written evidence for consideration by the Medicaid agency regarding payment suspensions. *Based upon this written evidence, a State may determine whether there is good cause to terminate a suspension of payment. Accordingly, we believe there are adequate due process protections in place pursuant to which a provider may establish good cause to termination a payment suspension.* (Emphasis added)

22.     As  this comment warns, the absence of clear guidelines in the suspension process could create the lack of meaningful process which would effectively terminate ("*de facto* termination") Providers from the D.C. Medicaid program.    This is precisely what has occurred here to Plaintiff.

23.     Moreover, the application of critical terminology without appropriate clarification as to the precise meaning of those terms in an evidentiary and due process context, creates vagaries and confusion in the procedural process, which  has allowed the District to act in a subjective and arbitrary fashion relative to the suspension of Vizion One's Medicaid payment.

24.     The statute's allowance of a state not to disclose certain evidence related to its "credible allegation of fraud" also creates an inconsistent and confusing challenge for Providers and state Administrative Fora in their attempts to interpret and apply federal  regulations against a framework of state procedural and substantive laws.    In the District of Columbia once the Agency suspends payments and a Provider appeals to the Office of Administrative Hearings, the State enjoys the burden of proof.  The Administrative Law Judge ("ALJ") has to then determine whether the State has met its burden to show  substantial evidence of a "credible allegation of fraud" when federal law simultaneously authorizes States not to disclose such evidence.  This vagueness in the law creates a competing tension  that impedes administrative and state judicial review of  a State Agency's suspension decision and chills Providers, such as Plaintiff's, constitutional due process rights.

25.     This exact dilemma played out in a recent D.C. Administrative decision involving another provider's suspension of pay based upon an alleged "credible allegation of fraud."    Therein, an ALJ observed this precise evidentiary and proof quagmire when necessarily focusing on permissible hearsay in the absence of direct evidence of the "credible allegation of fraud."  That

Judge stated: "In this case, there is no issue of weighing against direct testimony by witnesses. The problem here is that I have no access to the information relied upon by DHCF to determine whether allegations are credible. This evidence established only the general allegations of fraud in this case, and so I can only determine whether the general allegations, if true, might constitute fraud." *KBC Nursing Agency & HHC., Inc. v. D.C.  Department of Health Care Finance.*

26.  This particular ruling is complicated further by the ALJ's need to find that the District's showing is based upon substantial evidence thus of a seemingly oxymoronic "credible allegation of fraud."  The ambiguities and consequential procedural shortcomings of the Act and CFR are further demonstrated by the following factual assertions.

27.    On January 17, 2014, DHCF issued new policy guidelines interpreting 42 C.F.R. §455.23 that became effective two (2) weeks later on February 2, 2014. Those policies and procedures, however, failed to state clear guidelines, as urged by the federal regulations upon States, to ensure adequate procedural protections for providers in Defendant's process for determining, among other things, "credible allegations of fraud" and "good cause" exceptions to full or partial payment suspensions.  Upon information and belief, the District has not developed independent regulations and criteria for suspension of Medicaid payment and determining good cause.

28.    During its suspension period, Vizion One was  required to continue providing services to patients and to continue paying its staff, while foregoing reimbursement from Defendant.   The longer the pay suspension period, the longer the Provider has been   required to continue providing services, and the higher the likelihood that Defendant's actions would result in a Provider's financial inability to remain in business, nevertheless the Medicaid program.   The vagueness of the federal law and federal regulations as applied, has resulted in  Defendant's *de facto* termination of Vizion One from the Medicaid program.

29.     On February 20, 2014, the United States Attorney's office announced the arrest of Emiline D. Nkemera Besong ("Besong") on charges relating to healthcare fraud and conspiracy to commit healthcare fraud. A subsequent indictment stated that Besong's actions, along with those of at least one non-employee, defrauded D.C. Medicaid out of approximately $54,390.00. Vizion One's management was completely unaware of Besong's fraudulent actions prior to that date. No Vizion One manager or supervisor has been indicted or targeted to date.

30.     Defendant immediately suspended Medicaid payments to Vizion One without any advance notice or providing it an opportunity to respond. See Defendant's Notice of Suspension of Medicaid Payments dated February 20, 2014, attached as Exhibit A.   As a result, Defendant was unable to meet its February 21, 2014 payroll for approximately 1,100 employees. Despite continued non-reimbursement, Vizion One h2as continued via best efforts, to provide service to patients and to respect its continuing professional and financial obligations under its contract with the District.

31.   Vizion One has incurred unmet business expenses in excess of several million dollars. After ninety (90) days of non-payment from Defendant's DHCF, this amount has increased exponentially and is causing Plaintiff to experience inevitable financial ruin.

32.     On February 25, 2014 Plaintiff's then counsel provided to Defendant an extensive eight (8) page rebuttal document that requested lifting of the suspension of its Medicaid payments. Plaintiff's Counsel attempted to explain why the good cause exception should apply to Vizion One, noting that DHCF had not notified Plaintiff of sufficient details regarding its basis for finding "credible allegations of fraud," and that the alleged fraudulent incident involving Besong was limited to only one employee.

33.    Vizion One underscored to DHCF that its management neither knew about, sanctioned, nor benefitted from this single employee's fraud.  It explained that neither its system, nor any other system, is 100% foolproof and underscored the significant disruption in services that Defendant's actions caused, including the resulting harm to its patients and Vizion One's 1,100 employees.

34    Additionally, in the interest of ensuring compliance with applicable regulations and to avert fraud, Vizion One explained in its correspondence to DHCF that all new Vizion One PCA aides were required to participate in an initial three (3) hour orientation training session before being permitted to provide services. That training covered, among other things, its policies and procedures pertaining to fraud, waste, and abuse, including the responsibility to report any attempted inducements and the failure of any aide to show up at their assigned work site. Applicants who failed the initial screening process and/or failed to complete the orientation training session were not assigned clients. Vizion One's policies also required intake staff to verify that every client accepted for care legitimately required such care.   Additionally, it instituted a substantial compliance program to further ensure compliance with all policies and procedures.

35.    By abruptly and completely suspending Medicaid payment to Vizion One, DHCF created a situation in which (1) it did not have to disclose the factual predicate or any documentation related to its payment suspension decision; (2) it completely suspended payments to Plaintiffs for PCA services; (3) Plaintiffs were required to continue to provide PCA services; (4) there was an insufficient number of home health care providers in D.C. to which to transfer Plaintiffs' patients; (5) the duration of Plaintiffs' obligation to provide services was unknown because DHCF's transition plan was not yet in place; (6) Vizion One was required to assert rights in the

blind since it did not know the basis for Defendant's decisions; (7) Vizion One's finite assets were required to be depleted by law; (8) the government used a "temporary" suspension to effectively impose a *de facto* termination of Vizion One from the Medicaid Program; and (10) the government has forced Vizion One to challenge its infringement of Plaintiff's due process rights in order to preserve its business and its liberty interests.

36.    On March 6, 2014 DHCF Director Turnage testified before the D.C. City Council Committee on Health that:

> [b]ased on [DHCF Staff's] outstanding work and referrals to law enforcement over the past five years, we are now required to suspend payments for 52 percent of our home health care providers.

37.    Director Turnage added the remaining agencies did not have the capacity to accept the transfer of all of the 80% of District residents requiring PCA services, and quite predictably not over the course of the next thirty (30) days.

38.    Upon information and belief, when D.C. City Councilwoman Alexander inquired as to how home health care agencies would pay their aides in the event of a payment suspension, Turnage responded: "They are all millionaires, they can pay their staff."

39.    On or about March 20, 2013, DOH sent letters to suspended Providers, which notified them that their Medicaid licenses had been converted to provisional status, which were only valid for ninety (90) days, as compared to one (1) year for regular licenses. DOH staff explained that it took this action to ensure that DOH could closely monitor the suspended Providers and their patients to ensure that beneficiaries' needs continued to be met. If not, the offending Providers' provisional licenses would be terminated, thereby terminating their Medicaid Provider status.

40.    On March 26, 2014, more than one month after DHCF's suspension of payments to

Vizion One, Defendant denied Plaintiff's request for a good cause exception in a single sentence:

> "We have reviewed your response to our notice of suspension of payments to Vizion
> One, Inc. and we have considered the good cause exception and whether you
> suspend payment in part and our position has not changed."   (Emphasis added)

41.    At no time did Defendant state a specific basis for its decision or cite to the applicable

federal or local regulations upon which it relied to deny Plaintiff's good cause request.

42.    As noted above, the vagueness in the federal and local regulations, as applied by the

District of Columbia, allowed Defendant to suspend payments to Plaintiff in a manner that also

created evidentiary and proof problems at the initial stage of judicial review, as demonstrated by

the ALJ's above referenced ruling in *KBC Nursing Inc.  v. D.C.*  Case No 2014 DHCF 00089.

Notably, the ALJ necessarily sustained the government's objection that it not disclose evidence

which upon which it relied to suspend the Provider, KBC. He then explained in his opinion the

difficulty in reconciling the application of the "credible allegation of fraud" standard in the

context of D.C. rule of law on hearsay evidence, further explaining that said analysis required

him under D.C. law to examine "the reliability of the evidence." See Decision at 14.

43.    The ALJ further opined that DHCF had not introduced evidence of the "credible allegation

of fraud" into the record.  Thus, he was placed in a position in which he had to make a decision

about the credibility of information to which he had no access.  He further questioned whether

the general allegations constituted fraud.   *Id.* at 14.  The District is expected to appeal his

decision.

44.    Defendant also asserted the position that it had sole discretion to determine the existence

of good cause relative to its enforcement of 42 C.F.R. §455.15.   *Id.* at 15.

45.   Instructively, the U.S. Department of Health and Human Services (HHS) published its responses to public comments on amendments to 42 C.P.R. § 455.2 and stated as follows on the issue of good cause:

> *We do not interpret the new provision in the ACA as mandating that a State must always suspend all payments to a provider in cases of an investigation of a credible allegation of fraud. In general, we continue to believe a payment suspension should apply to all of a provider's claims consistent with HHS OIG's responses to comments in the 1987 regulations that it is usually difficult to determine which claims are clean claims until after an investigation is completed, and one purpose of payment suspension is to build a type of escrow account out of which any overpayments can be deducted when an investigation is concluded.* (Emphasis added).

> With certain new constraints, however, we have chosen to continue to allow States the flexibility to suspend payments in part. For example, as stated in the preamble to the current regulation, there may be times where an investigation is solely and definitively centered on only a specific type of claim in which case a State may determine it is appropriate to impose a payment suspension only on that type of claim.   *Likewise, a State might determine that an investigation of a credible allegation of fraud is limited to a particular business unit or component of a provider such that a suspension need not apply to certain business units or components of a provider.* (Emphasis added)

76 F.R. 5862, 5934 (2011).

46.   Based upon this comment, the suspension of payment should correspond with the amount which is potentially subject to fraudulent misconduct and further potentially limited if the suspected misconduct is confined to a certain business unit or component of provider's business.

47.   Defendant, however, failed to implement local regulations which created objective clear definitions, guidelines and criteria pursuant to which DHCF officials would implement the intended objective of these laws.   Defendant thus failed to objectively and impartially apply federal guidelines in its determination that "good cause" did not exist to justify alternatives other than full suspension of payment for Vizion One.   In this case, the amount at issue is less than one (1) per cent of Vizion One's annual gross income.

48.     In its March 26, 2014 response to Plaintiff's February 25, 2014 letter, Defendant  stated that the suspected "credible allegation of fraud" involved only one employee.  Plaintiff employed 1,100 individual employees.  Yet, it denied Plaintiff's request for a good cause exception without further explanation.

49.     In short, Defendant has relied upon an allegation of fraud against one non-managerial, non-supervisorial employee, to tarnish Plaintiff's  entire business's reputation, effectively terminate its relationship with the government, and  ultimately, force it out of the Medicaid business.

50.  "Good cause" existed between February 20, 2014 and March 26, 2014 through the present filing for the District to consider an alternative to full suspension of payment for Vizion One because the purported "credible allegation of fraud" did not constitute a pattern of fraud.

51.  "Good cause" existed because DHCF's payment suspension created institutional disruption to the continuity of care, beneficiary access to and choice of home health services, particularly for those at high risk.

52.     "Good cause" existed because the manner in which Defendant imposed full suspension of payment required Plaintiff to continue paying its staff and to continue providing services until such time as they were terminated by the government, created potential risks of liability to the Provider and ultimately affected its very ability to remain in business.

53.     DHCF's failure to promulgate clear guidelines and criteria to govern its decision making regarding suspensions of payment and good cause exceptions allowed DHCF to subjectively and arbitrarily make adverse decisions about Plaintiff's business resulted in its *de facto* termination from the Medicaid program.

54.     Despite declining revenue attributed to suspended payments, Plaintiff continued to provide PCA services to Medicaid beneficiaries.  As a result, Plaintiff experienced a precipitous reduction in revenue, which placed it in imminent peril of irreparable financial collapse. Plaintiff cannot afford to pay PCAs indefinitely, lose unreimbursed revenue, lose its provider license, and then be expected to remain in business.

55.     In order to comply with its obligation and mitigate losses, Plaintiff's only viable option was to immediately notify Medicaid beneficiaries of the termination of services, and commence the process of transferring them to other providers.

56.     Two (2) days later, on March 28, 2014, Mr. Turnage sent an email to suspended providers in which he changed the patient transfer process.

57.     On Monday March 31, 2014, six (6) weeks after summarily suspending Plaintiff's payments, DHCF sent yet another email to Plaintiff and other suspended Providers, stating, "DHCF's plan describing the patient transfer process will be released tomorrow morning."

58.      On April 2, 2014, ABA, Inc. filed a civil action in this court against Defendant.  On April 9, 2014, government counsel represented to this Court during a TRO hearing that all pending transfers of patients from suspended providers would be completed by April 12, 2014 in order to counter the suspended providers' claims of an imminent threat of financial destruction. DHCF failed to meet the commitment it set forth to this Court.

59. Immediately following the hearing,  DHCF informed all suspended home health agencies, including Plaintiff, of its intention to  terminate their contracts  for convenience.  In the same email, DHCF indicated that *all patients* would be transferred from by April 19, 2014, nearly two (2) months after its suspension of  Plaintiff's Medicaid payment.

60. DHCF made this decision despite its granting a provisional license to Plaintiff Vizion One's compliance with all such provisional license reporting requirements.

61. The notice of intent to terminate Plaintiff for convenience provided no basis for the DHCF's decision, except a reference to a provision in the Provider agreement.

62. Rather than correct any potential defect in Defendant's administration of applicable regulations, thereby appropriately enforcing federal law, Defendant insisted upon modification of Defendant's provisional license and termination of its contracts for convenience which is further illustrative of Defendant's harm to Plaintiff flowing from its violation of Plaintiff's due process right. Once again, Defendant acted in a biased, impartial and subjective fashion, thereby exacerbating Plaintiff's harm.

63. DHCF management also knew that the longer a provider's payments remained suspended, the greater the risks for Vizion One's depletion of limited finances and non-compliance with ongoing service requirements. Without objective clear criteria, DHCF officials were able to freely interpret their sham local guidelines in any manner in which they pleased. They were thus able to camouflage terminations as temporary suspensions, to effectively institute *de facto* termination of Vizion One from the Medicaid program.

64. Defendant's actions also follow an August 12, 2012 administrative ruling which reversed Defendant's denial of Vizion One's renewal of its license application as per a motion for summary adjudication. Therein, the ALJ Judge construed applicable regulations to grandfather home care agencies that were in operation and licensed prior to December 29, 2009, while retaining the agency's right to require subsequent applicants to obtain a CON. That decision may have influenced the manner in which Defendant is treating Vizion One, noting that

Defendant has settled, and/or is settling, its claims against other suspended providers except among a few others, Vizion One.

65.  Upon information and belief, the District's complete suspension of payments to Plaintiff may have  been compromised, in part, because the ALJ in 2012 overruled DHCF's  non-licensing of Plaintiff.

66.  The cumulative effect of DHCF's subjective and biased application of  federal regulations and local guidelines is that Defendant has been able to use this law to completely suspend payments to Plaintiff based upon a non-disclosed set of facts, thereby preclude Plaintiff from refuting these "allegations", interpose a so called "temporary" suspension and use that suspension as here to effectively terminate the Provider's contract.   The result is that the provider, Plaintiff herein,  which employed 1,100 employees, is forced out of the Medicaid business in its entirety without knowing why and inevitably as here  terminated *de facto* and in fact *de jure* from the Medicaid program,  based upon an allegation of a single employee's fraud, without Defendant having to disclose any documentation or information related thereto,  absent such, to enjoy a meaningful opportunity to respond and absent a reasoned good cause finding.

67.      Absent any credible allegation or reliable evidence of  fraud among Vizion One managers or supervisors, or any pattern of fraud in Vizion One, Defendants strategically disrupted its business.

68.  On May 22, 2014 Defendant notified Plaintiff that on May 23, 2014 it would receive a notice of intention to terminate it for convenience.

69.      On May 23, 2014, three (3) months after fully suspending Defendant's payments, Defendants notified Plaintiff that it was terminating its license for convenience, obviously for

reasons connected to its asserted "credible allegations of fraud" of which Plaintiff still to this day has no knowledge.

70. Since February 20, 2014 Defendant's actions have denied Plaintiff reimbursements for patient services, caused Plaintiff to deplete its resources, effectively forced the shut-down of Plaintiff's business and lose its 1,100 employees all due to the vagueness of the applicable federal laws, as applied by the District of Columbia.

71. Defendant's termination of Vizion One for convenience was the District's ultimate intention and is a product of its arbitrary and capricious decision-making process.

72. At all times referenced herein, Defendant acted deliberately and indifferently to Plaintiff's constitutional due process rights in its application of federal laws.

### COUNT I
### VIOLATION OF DUE PROCESS
**Defendant's violation of Plaintiff's procedural due process rights**

73. Plaintiff incorporates and re-alleges paragraphs 1-72. Plaintiff further alleges that Defendant's policies, practices and customs resulted in the deprivation of Plaintiff's constitutional rights.

74. Plaintiff further alleges that the ACA, at Section 6402(h)(2), which authorizes State agencies to suspend payments, either in whole or in part, to providers under investigation for "*credible allegations of fraud*" and its implementing regulations at 42 C.F.R. §455.2 are vague, as applied and overbroad in that the statute fails to sufficiently define critical terms such as "credible allegations", "credible allegations of fraud", "fraud" in the context of credible allegations", and "individual." Said regulations are also vague, as applied, by Defendant. 75. Absent clarifying regulations, Defendant has subjectively and arbitrarily applied these provisions in a manner that deprived Vizion One of its right to know in a timely fashion what wrongdoing it

was and is being accused of and further, a right to respond to and refute said allegations prior to the *de facto* termination of its business, consistent with principles of fundamental due process.

76.    The APA's modification of the State's proof burden from "reliable evidence" to "credible allegation of fraud", absent clearer guidance as to Providers' due process rights, created a confusing and misleading proof scheme.    The vagueness of these terms on their face and as applied create difficulty and confusion for State Health agencies and state judges required to consider the meaning of a "credible allegation of fraud" against the backdrop of state procedural and substantive law.    Further, this law results in a strict liability type finding of fraud and punishes an accused based upon a mere "credible allegation" versus any proffer of "reliable evidence" of fraud.

77.    The vagueness of federal law and regulations facilitates the government's imposition of a *de facto* termination cloaked in the cloth of a "temporary" suspension, as demonstrated herein.

78.    For these and other stated reasons, Defendant's enforcement actions and corresponding interpretations of applicable federal law and purported local policies and guidelines which seek to implement these laws, violate Vizion One's due process rights under the Fifth Amendment of the United States Constitution.

## COUNT II
## VIOLATION OF DUE PROCESS
**Defendant's violation of Plaintiff's procedural and substantive due process rights**

79.    Plaintiff incorporates and re-alleges paragraphs 1-78.    Plaintiff further alleges that Defendant's policies, practices and customs resulted in the deprivation of Plaintiff's constitutional rights.

80.    Alternatively, assuming the constitutional validity of the APA and 42 C.F.R. §455.2, Defendant specifically failed to develop adequate local regulations and/or guidelines to ensure

procedural safeguards for Vizion One per its application of federal regulations regarding suspension of payment and its determinations of "credible allegations" "credible allegations of fraud," "good cause" and other matters.

81. Said failure allowed Defendant to arbitrarily and capriciously decide whether to impose a full or partial suspension of payment here and to subjectively determine the existence of "good cause" in its assessment regarding the purported "credible allegation of fraud" against Vizion One.

82. Absent the promulgation of local policies and procedures which adequately ensured the protected Plaintiff's property interest, Defendant relied exclusively on federal regulations and guidelines and imposed them in an unintended absolute and strict manner relative to "credible allegations of fraud" and "good cause" determinations, thereby permanently depriving Vizion One of its substantive and procedural due process rights.

83. This particular outcome is outrageously Un-American and creates a dangerous precedent. Even if Plaintiff were involved in fraudulent behavior, the process in which payments are suspended should ensure minimum safeguards commensurate with meaningful due process. The absence of clear local guidelines and criteria to guide Defendant's decision-making regarding suspension of payments allowed DHCF officials to make subjective and arbitrary decisions regarding Plaintiff, deny its February 25, 2014 good cause request, terminate its contract for convenience and institute its *de facto* termination from the Medicaid Program.

84. For these and other stated reasons, Defendant's enforcement of applicable federal law, as applied, violates Plaintiff's substantive and procedural due process rights.

## COUNT III
### DECLARATORY RELIEF

85.     Plaintiff incorporates and re-alleges each and every allegation contained in the paragraphs 1-84.

86.  Plaintiff asserts that 42 C.F.R. §455.23, the predicate federal regulation for suspension of payments, is vague because the terms "credible allegations" and "individual" are not adequately defined to ensure protection of a Provider suspected of fraud.

87.     Plaintiff asserts violations of its procedural and substantive due process rights per the District's implementation, application and enforcement of certain federal laws.   Therefore, a valid dispute exists regarding Plaintiff's rights pursuant to 42 C.F.R. §455.23 which this Court may rule upon pursuant to 28 U.S.C. §2201.

88.     Plaintiff seeks a declaratory judgment regarding the District's interpretation and enforcement of 42 C.F.R. §455.23, including whether the District violated Plaintiff's procedural and substantive due process rights by failing to properly develop local policies and procedures that incorporated substantive and procedural protections for Providers, thereby allowing Defendant to make arbitrary and capricious decisions.

## COUNT IV
### EQUITABLE RELIEF
### TEMPORARY AND PRELIMINARY INJUNCTIVE RELIEF

89.     Plaintiff incorporates and re-alleges paragraphs 1-88.

90     Vizion One's    immediate business operation has been substantially and irreparably harmed by Defendant's February 20, 2014 suspension of payments.    Further, the government's actions have effectively terminated *de facto* Vizion One's participation in the Medicaid program. Based upon the aforementioned violations of its due process rights, Vizion One enjoys a likelihood of success on the merits of its claims.

91.    Awarding Vizion One requested injunctive relief is in the public interest.

## PRAYER FOR RELIEF

WHEREFORE, Vizion One respectfully requests and prays that the Court order the following relief given Defendant's unconstitutional *de facto* termination of its contract and the effective destruction of its business and all corresponding business opportunities:

A.  Appropriate economic damages, including any and all reimbursements due and owing, lost profits and interests thereupon, and compensatory damages in an amount in excess of ten million dollars ($10,000,000.00); and

B.  Appropriate declaratory relief regarding the vagueness of the terms referenced above as applied, appropriate equitable relief, attorneys' fees, and any such other relief as this Court deems necessary and appropriate.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury on all issues so triable.

DATED:  May 23, 2014

Respectfully submitted,

Donald M. Temple, Esq. #408749
Donald M. Temple, P.C.
1101 13th Street N.W. Suite 910
Washington, DC 20005
dtemplelaw@gmail.com